VÁZQUEZ, PLAINTIFF AND APPELLEE, *v.* SANTALÍS ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in an Action of Ejectment.

No. 1662.—Decided July 27, 1918.

EJECTMENT—DESCRIPTION OF PROPERTY—COMPLAINT—CAUSE OF ACTION.—When in an action of ejectment it is sought to recover undetermined shares in a property and the complaint does not attempt to describe the shares with the necessary certainty, it does not state a cause of action.

ID. — COMMON OWNERS. — It may be seriously doubted, and our jurisprudence strongly tends to support the doubt, that an action of ejectment would lie by one owner in common against another owner in common.

ID.—NULLITY—LIMITATION.—As this case must be regarded as an action of nullity in order to give any real vitality to the complaint, and as the lower court held it to be such, it must be considered that the action is one of nullity and, as such, is barred by limitation.

ID.—ESTOPPEL—TITLE.—A person who consciously intervenes and helps to frame a title is estopped to deny that such title is a just title.

ID.—DEED OF PARTITION.—A deed of partition is an entirety with its parts so interlocked that it cannot be destroyed in part without affecting the whole. The only proper action that could lie under the facts of this case would be one that contemplated not alone the nullity of the allotment but the nullity of the whole partition deed.

ID.—ID.—RENUNCIATION OF RIGHTS.—By taking under this partition deed and especially by never disaffirming any part of it within four years after they became of age, the minors renounced whatever right they had.

The facts are stated in the opinion.

*Mr. José Sabater* for the appellants.

*Messrs. Fernando Vázquez* and *J. R. F. Savage* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The complaint in this case, which is styled one in revindication and claim of fruits, sets up substantially that the complainant is assignee of José, Bernardo and Matea Olivares y Vélez; that Ramón Olivares y García died testate on the 15th of March, 1894, leaving five children by his first wife, namely, Julio, María, Julio Segundo, Ramón and Guillermo; that by his second wife, Monserrate Vélez, he had six children, Bernardo, Matea, José, Hipólito, María and Ramona; that among other things his property consisted of the farm Camila and that he made his said eleven children his heirs; that on the 26th of August, 1895, there was an extrajudicial inventory and valuation of the property, the widow intervening in representation of herself and her minor children, Julio Olivares for himself and in representation of the other minor children and Joaquín Francisco Santalís in representation of some minor children, grandchildren of the testator; that on the same day similarly a partition of the property took place; that there was adjudicated to Luis Pío Santalís, who was neither an heir nor a testamentary creditor, a piece of realty in the sum of $20,324.53 to pay the debts of the estate, namely,

a portion equal to about 64 parts of the hundred equal parts into which the *finca* Camila was considered to be divided; that Hipólito Vélez died intestate and was succeeded by his mother, Monserrate Vélez; that Ramón Olivares died intestate and was succeeded by his brothers and sisters; that Guillermo Olivares died testate, leaving his property to his brothers Julio and Julio Segundo; that Monserrate Vélez died intestate, being succeeded by her children; that Julio Segundo died intestate, being succeeded by his brothers and sisters; that Ramona Olivares y Vélez died similarly intestate and so did her sister María Olivares y Vélez; that Julio Olivares y Otero ceded all his rights in the inheritance to Luis Pío Santalís and so did Monserrate Vélez; that the adjudication to Luis Pío Santalís was made when, with one exception, all the heirs were minors, without previous judicial authorization and without first showing the necessity and utility thereof; that the said portion was acquired in bad faith by Luis Pío Santalís and without a just title and since that day he withholds it, receiving the fruits that it produced and is producing; that José, Bernardo and Matea, directly and as heirs of their brothers and sisters, assigned all their rights in the inheritance to the complainant, with power to bring this action; that the adjudication of the said 64/100 parts of the property Camila is null and void, and that therefore the complainant prayed for a judgment declaring the said adjudication void and decreeing the defendant to return to the heirs of Ramón Olivares and García, among whom stood the complainant as assignee, the said 64/100 parts of the *finca* Camila and to give a complete and detailed account of the rents and fruits of the property Camila, and for costs and counsel fees.

There was demurrer to this complaint, which was overruled, and we shall consider two grounds of it: 1st, that there was no cause of action; 2nd, that the action, being one of nullity, had prescribed by virtue of section 1268 of the Civil Code.

After the decision in *Longpré* v. *Díaz*, 237 U. S. 512, this

country has been visited with a wealth of litigation seeking to recover stale claims, the kind of suit never favored by the courts.    The case of *Longpré* v. *Díaz*, however, is not a charter for every kind of claim where minors are concerned.    In that case there was a single minor child who embraced in himself the whole title to the land in controversy, and the adjudication being void, there was no person in the world who had an adverse title to him or equal rights with him in the said land. The court said: "We say this because the so-called partition and the sale of the property by a mere private agreement were directly in the teeth of the requirements of the law concerning the administration and sale of a minor's property and therefore such mere private sale created no rights whatever conflicting with the title vested in the minor in virtue of his heirship."    The substantive rights of the minor children of Ramón Olivares y García were perhaps the same or similar to the rights of the minor child in the *Longpré* case, namely, that the adjudication as such to Santalís was not binding on said minor children—in other words, that the said adjudication, if it had stood alone and if properly attacked, could have been destroyed or disregarded.    The *Longpré* case is not, however, determinate of the rights of a number of heirs among themselves, where elements other than a mere adjudication have intervened.

The complaint does not state a cause of action.    If it be examined it will be seen that in no place does it describe exactly what the possession of Santalís is to-day and yet the complaint shows that other parts of the property were assigned to him.    The complaint is deficient as a complaint in revindication, inasmuch as the share of the complainant, divided or undivided, is absolutely undetermined.    Assuming that complainant has rights of the children whose shares he bought, they would have no action in revindication because the complaint makes no attempt to reduce their shares to certainty.    The complaint fails to locate the other portions of

the *finca* Camila, containing only an averment that 64/100 thereof were attempted to be adjudicated to Santalís.

We are utterly unable to tell from the complaint what portion or even what "ideal" portion belonged to the assignors of Vázquez at the time of the institution of the suit. The theory of the complaint was that the 64/100 parts be returned, not to Vázquez, nor yet to his assignors, but to all the heirs. And it was clear that Santalís had as much, if not more, right to the 64/100 parts by reason alone of the transfers to him by the other heirs, to say nothing of claims for debts.

It may be seriously doubted, and our jurisprudence strongly tends to support the doubt, whether in any event an action of revindication would lie by one owner in common against another owner in common. These assignments to Santalís are not alone to the parts which had been adjudicated to the respective heirs by the original partition deed, but all the right, title and interest of the sued heirs. Hence it is perfectly clear from the complaint that the right of Santalís, acquired by assignment from the heirs who conveyed to him, is exactly of the same nature as the rights assigned to Vázquez. If Vázquez has a claim to the adjudicated part of 64/100 of the farm Camila, so has Santalís. And something more should have been done, in any event, to enable a marshal to execute a judgment on the demurrer if it is a suit in revindication.

The only way to regard the facts of the complaint to give it any real vitality is to consider it an action of nullity. In form it is necessarily so. That last statement of fact sets up the nullity; the prayer is for nullity, and the court, at the instance of the complainant, so declares it. An action of nullity it is, and as such it has prescribed.

After the demurrer was overruled the defendants answered. Among other things, they set up a plea of acquisitive possession.

The defendant alleged acquisitive prescription of more than twenty years. The defendant was necessarily and actually in possession of a large portion of the land with a good title, more than a just title. The defendant is charged with bad faith. But what shall we say of the complainant, lawyer and procurator who was the active man of law, counsellor and adviser of minors, and largely instrumental in conveying this 64/100 portion to Santalís? We do not need to base our decision on this point, but we may question if Fernando Vázquez was not estopped to deny that a title which he helped to frame and in which he consciously intervened was a just title. We may question, too, if an estoppel would not run against him on the main issue, even if no plea of prescription had been filed.

Coming to other points developed at the trial, it is admitted that Santalís is in possession of the whole property. The will was offered in evidence. The testator devised the part of free disposition to his wife. That part was also acquired by Santalís in the transfer to him by Monserrate Vélez. The partition deed was offered in evidence. From it the fact appears that each of the predecessors in title of Fernando Vázquez, the alleged minor heirs, received an "ideal" portion of the land in controversy. They accepted this portion and it was sold to Santalís. Was the partition deed of 1895 an entirety, or was it susceptible of segregation in part? A partition deed, interlocked as it is, must be an entirety. At least one who relies on the destruction of a part must show that that part can be segregated without destroying the whole. Here everybody, complainant, defendant and heirs in general, accepted and acted under the partition deed. No action can lie in this case which does not contemplate the destruction of the whole testamentary proceedings. There is not the faintest suggestion, moreover, that the said minor heirs, long since of age, are offering to put into hotchpot the portions acquired by them. So that the only proper action that could lie under

the facts of this case would be one that contemplated not alone the nullity of the adjudication, but the nullity of the whole partition deed.

There is, too, the matter of affirmance or renunciation of rights. By taking under this partition deed and by specifically never disaffirming any part of it within four years after they became of age, the minors renounced whatever rights they had. At the date of the said partition deed in 1895 the youngest of the minors, assignors of Vázquez, was eight years old. Hence he was 29 years old when this suit was brought.

The judgment should be reversed and one rendered for defendant.

*Reversed and substituted.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.